# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WENDY L. ANDERSON,<br><br>               Plaintiff,<br><br>vs.<br><br>JOHN J. COREY, M.D.;<br><br>               Defendant. | 8:18CV553<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion to Dismiss, ECF No. 3, filed by Defendant John J. Corey. For the reasons stated below, the Motion will be granted.

## BACKGROUND

The following facts are those contained in the parties' briefs supported by citations to the pleadings, affidavits, and exhibits, and any factual disputes are, for purposes of this Motion, resolved in favor of Plaintiff Wendy Anderson.

Anderson resides in Omaha, Nebraska, and, in August 2016, she conducted an online internet search for a doctor to perform breast augmentation surgery. She discovered Corey's professional website which advertised the services Anderson sought. Corey is a board-certified plastic surgeon licensed to practice medicine in Arizona, and he practices in Scottsdale, Arizona. After reviewing Corey's website, Anderson scheduled a consultation and flew to Arizona for the appointment. She then returned to Omaha and decided to hire Corey to perform her surgery. Anderson flew back to Arizona on October 24, 2016, and Corey performed the surgery on October 25, 2016, in Scottsdale, Arizona. Anderson had one follow-up visit with a nurse at Corey's practice before she returned to Omaha.

On November 6, 2016, Anderson was still recovering from the operation. She called Corey's office and reported to a nurse that she was feeling ill and had an abnormally high temperature. The nurse instructed Anderson not to go to an emergency room, to take Advil, and to call back the next day. Corey reviewed images of Anderson's surgery and found no cause for concern. Later, on November 6, 2016, Anderson went to a hospital in Omaha where she was diagnosed with an infection which allegedly resulted from a contaminated implant inserted during her surgery. At some point following this diagnosis, Anderson called Corey's office again, and Corey advised Anderson not to remove the implants. Anderson filed a lawsuit against Corey with the Douglas County District Court in Omaha, Nebraska, and Corey removed the case to this Court.[1]

## STANDARD OF REVIEW

"When challenged, 'the plaintiff bears the burden to show that jurisdiction exists.'" *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 848 (8th Cir. 2017) (quoting *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 819 (8th Cir. 2014)). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath*, 760 F.3d at 820 (citing *K—V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011)). "A plaintiff's prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Fastpath*, 760 F.3d at 820

---

[1] In addition to the personal jurisdiction issue, the parties dispute whether this Court is a proper venue under 28 U.S.C. § 1391. As the Court pointed out, however, this case was removed from the Douglas County District Court, and venue of removed cases is governed by 28 U.S.C. § 1441(a), not § 1391. *See, e.g., Micro-Surface Finishing Prods., Inc. v. SDI, Inc.*, 97 F. Supp. 3d 1077, 1080 (S.D. Iowa 2015) (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("The venue of removed actions is governed by [§] 1441(a) . . . ."); 14C Charles Alan Wright et al., Federal Practice and Procedure § 3732 (4th ed.).

2

(internal quotations omitted).  If no hearing is held, the evidence must be viewed "in a light most favorable to the plaintiff" and factual disputes are resolved in the plaintiff's favor. *Id.*  Plaintiffs cannot shift the burden of proof to the party challenging jurisdiction.  *Id.*

**DISCUSSION**

Anderson argues Corey is subject to specific personal jurisdiction in Nebraska. "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment."  *Fastpath*, 760 F.3d at 820 (quoting *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012)).  Because Neb. Rev. Stat. § 25-536 extends jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause, *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003), the Court need only determine whether the assertion of jurisdiction offends due process.

"Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice."  *Fastpath*, 760 F.3d at 820 (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291-92 (1980)).  "Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011)).  This "ensures that a defendant will not be hailed into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person."  *Id.* (quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003)).  Thus,

3

jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Id.*

Giving "significant weight" to the first three, the Court must consider five factors in determining whether it can exercise personal jurisdiction over Corey consistent with due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [Nebraska]'s interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Aly*, 864 F.3d at 849 (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015)).

**A. Website**

Anderson's first asserted contact is based on Corey's website. "The Eighth Circuit has adopted the test articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) for analyzing specific jurisdiction in the special cases where a defendant maintains a website accessible in the forum state." *Higgins v. Ky. Sports Radio LLC*, 8:17CV367, 2018 WL 318460, at *5 (D. Neb. Jan. 5, 2018) (citing *Lakin v. Prudential Sec.*, 348 F.3d 704, 711 (8th Cir. 2003)); *see also Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).

In *Zippo*, "[t]he court created a 'sliding scale' to measure the likelihood of personal jurisdiction." *Johnson*, 614 F.3d at 796. On one end, courts may exercise personal jurisdiction in "situations where a defendant clearly does business over the Internet" in the forum by "enter[ing] into contracts with [its] residents . . . that involve the knowing and repeated transmission of computer files over the Internet." *Lakin*, 348 F.3d 710. On the other end, courts may not exercise personal jurisdiction in "situations where a defendant

4

has simply posted information on an Internet Web site that is accessible to users in foreign jurisdictions." *Id.*; *Johnson*, 614 F.3d at 796 ("The scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a website."). Between these two ends lies those situations where the defendant operates an "interactive Web site[ ]" that allows users to "exchange information with the host computer." *Id.* at 711. In the case of an interactive website, courts consider "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site[,]" *id.*, and "only websites sufficiently analogous to those in the first category can support personal jurisdiction[,]" *Higgins*, 2018 WL 318460, at *6.

Anderson does not present her argument under the *Zippo* framework. Rather, she argues that Corey has sufficient minimum contacts with Nebraska based on his website's "recruitment of nationwide clients, including Nebraska residents." Pl.'s Br., ECF No. 9, Page ID 50. In *Fastpath*, the Eighth Circuit considered a similar argument and explained that "[w]hile [the defendant's] website and public webinar may have been accessed by [the plaintiff] in Iowa and may have reached potential Iowa customers, nothing suggests that [the defendant's] marketing efforts were actively, exclusively, or even predominantly targeted at Iowa customers." 760 F.3d at 824 (finding the district court lacked personal jurisdiction over the defendant). Here, Anderson has pointed to nothing on Corey's website that suggests he targeted Nebraska residents, only general statements encouraging prospective clients to travel to Scottsdale, Arizona. Those statements do not establish minimum contacts with Nebraska. *See id.*

Under *Zippo*, Corey's website is largely passive and does little more than provide information to users. It allows users to email messages to Corey's office to request more

information or a virtual consultation, but it has no other interactive aspects. Webpage, ECF No. 10-1, Page ID 60-64. Based on the record before the Court, Anderson did not use this interactive function.

Accordingly, Anderson has failed to demonstrate that Corey's website subjects him to specific personal jurisdiction in Nebraska.

**B. Phone Call**

Anderson's second asserted contact is based on the communications she had with Corey and his office after she returned to Nebraska. On November 6, 2016, Anderson called Corey's office to report that she felt ill and had a fever. A nurse told her to take Advil and call back the next day. Instead, Anderson went to a hospital in Omaha where a doctor diagnosed her with an infection which she alleged resulted from a contaminated implant. At some point thereafter, Anderson called Corey's office again, and Corey recommended that she not have the implant removed. Anderson alleged these communications amounted to negligent post-operative care, the effects of which were felt by Anderson in Nebraska.

Generally, telephone communications are not sufficient to justify exercise of personal jurisdiction. *See, e.g., Eagle Tech.*, 783 F.3d at 1137 (citing *Viasystems, Inc. v. EBM—Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)); *see also Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002) ("Contact by phone . . . is insufficient to justify exercise of personal jurisdiction under the due process clause.")). Thus, the nature and quantity—two phone calls—of these contacts are not substantial. Further, the type of argument Anderson makes in this case—that the effects of Corey's allegedly negligent post-operative care were felt in Nebraska—does not establish specific personal

6

jurisdiction. *See Viasystems*, 646 F.3d at 594 (quoting *Johnson*, 614 F.3d 796); *Porter*, 293 F.3d at 1077 (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995) (rejecting "the plaintiff's contention that, because the 'effects' of the firm's negligence were felt in [the plaintiff's home state], the law firm had caused an injury there by conduct directed at that forum") (alteration in original)).

The Court finds Anderson has not met her burden to show that Corey is subject to specific personal jurisdiction in Nebraska consistent with the Due Process Clause of the Fourteenth Amendment.

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 3, filed by Defendant John J. Corey, is granted; and
2. This action is dismissed, without prejudice.

Dated this 4th day of February, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge